FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 FEB 22  P 1: 30

CLERK'S OFFICE
AT GREENBELT
BY_____DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

|  |  |  |
|---|---|---|
| **MICHAEL TODD**, *et al.*, | * | |
| **Plaintiffs**, | * | |
| | * | |
| **v.** | * | **Case No.: GJH-15-154** |
| | * | |
| **XOOM ENERGY MARYLAND,** | * | |
| **LLC**, *et al.*, | * | |
| **Defendants.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

Imagine, for a moment, that a friend approached you one day and told you about a deal to save costs on your energy bill, promising that by switching to a new energy company, you could save significantly over the monthly prices you pay to your local utility company—specifically, that the prices with this new company would be consistently lower than what you are currently paying. Believing that you are about to receive a great bargain, you agree to switch service providers, only to later discover that the prices you pay with the new company are significantly higher—between 30 and 130 percent higher—than you would have paid to the local utility company during the same period. You may, perhaps, feel as though you were duped. This sort of bait-and-switch marketing scheme is precisely what Plaintiffs Michael Todd, Elizabeth Donnellon, and Jerome Bonicos (collectively, "Plaintiffs") have alleged occurred in this purported class action against Defendants XOOM Energy Maryland, LLC, XOOM Energy, LLC, and ACN, Inc. (collectively, "Defendants"). *See* ECF No. 33. Presently before the Court is Defendants' Motion to Dismiss all counts of Plaintiffs' Complaint, ECF No. 37, and Plaintiffs'

Motion for Leave to File a Surreply, ECF No. 45.[1] Deeming no hearing necessary, *see* Loc. R.

105.6 (D. Md.), the Court now rules and concludes that, based on the facts presently alleged, the

Court must dismiss many of Plaintiffs' Claims, but Plaintiffs will have the opportunity to amend

their Complaint. Accordingly, Defendants' Motion to Dismiss is granted, in part, and denied, in

part; Plaintiffs' Motion for Leave to File a Surreply is also granted, in part, and denied, in part.

## I.    BACKGROUND

Until recently, electricity and natural gas were supplied and distributed by local utility

companies and governed by state regulation, but, not long ago, states modified energy

regulations to allow third-party companies to supply energy in the hope of enhancing

competition between energy providers. *See* ECF No. 33 at ¶ 13. Energy deregulation would, in

theory, allow consumers to price-shop for the lowest energy rates. *Id.* at ¶ 14. In this action,

however, Plaintiffs allege that Defendants ACN, XOOM Energy, and XOOM Energy Maryland

engaged in a deceptive marketing scheme with respect to their "variable rate Simpleflex plan," in

which they promised consumers lower energy rates than those charged by the local utility

company but then ultimately charged rates far in excess of those charged by such local utilities.

*See id.* at ¶ 1.

According to the Amended Complaint, ACN is "a corporation with its principal place of

business in Concord, North Carolina" and is a "multi-level (i.e. pyramid) marketing company

that provides, among other things, energy through XOOM Energy using a network of

independent sales agents  known as IBOs." *Id.* at ¶ 10. XOOM Energy is an unregulated retail

electricity and natural gas provider that purchases such electricity and natural gas from other

companies and delivers it to customers through a local utility company. *Id.* at ¶ 11. XOOM

---

[1] The Court will deny as moot Defendant's Motion to Dismiss for Lack of Jurisdiction, ECF No. 25, and
Defendants' Motion to Dismiss for Failure to State a Claim, ECF No. 26, in light of Plaintiffs' filing of an Amended
Complaint, ECF No. 33. Defendant Xoom Energy New Jersey, LLC, is terminated from this action.

Energy Maryland is a subsidiary of XOOM Energy which supplies electricity and natural gas to Maryland customers, but its "day-to-day operations" are controlled by XOOM Energy. *Id.* at ¶¶ 11–12.

Together, it is alleged that Defendants engage in a pyramid-marketing scheme whereby they pay IBOs commissions to encourage family and friends to switch to XOOM as their energy provider. *Id.* at ¶ 15. IBOs are trained through "sophisticated and uniform selling scripts and other marketing materials" in order to "lure consumers to switch from their local utility companies or other energy supplies to XOOM, with the misleading promise that they will receive lower competitive rates resulting in savings on their monthly bills." *Id.* at ¶ 16. Specifically, IBOs are told to advertise to customers that by switching to XOOM, "they will enjoy energy cost savings in perpetuity." *Id.* at ¶ 18. IBOs are told that "XOOM Energy is a way for [their] friends and family to save money on their electricity and gas bills and for [IBOs] to make quick money." *Id.* IBOs are not told, and therefore do not inform potential customers, about the possibility of price fluctuations or spikes. *Id.* Consumers are purportedly promised low energy rates "which the Defendants fail to charge" and, rather than save money, consumers' energy bills increase dramatically. *Id.* at ¶ 16. Additionally, when a customer wants to cancel their XOOM services, switching services can take up to two billing cycles. *Id.* at ¶ 17. Numerous XOOM customers have lodged complaints about these practices online, as well as with their public utilities commissions. *Id.* at ¶¶ 23–24.

Each Plaintiff tells a similar story regarding how they ended up enrolled as a XOOM customer. Mr. Todd, a resident of New Jersey, received a call from an ACN IBO named Phil in or around May 2013 and was "promised . . . that if he switched energy suppliers to XOOM, his energy bills would be consistently cheaper than what he was paying his local utility provider."

*Id.* at ¶ 6. A few months after Mr. Todd switched providers from the local utility company to

XOOM Energy New Jersey, LLC, however, the rates he was charged for his electricity supply

increased substantially; specifically, his rates were 86 percent higher in January 2014 and 128

percent higher in February 2014 than that which he would have paid to his previous local utility

service. *Id.*

      Mr. Bonicos, also a New Jersey resident, had a similar experience. He was approached at

his home by an IBO named William in or around January 2013 who stated that "if he switched to

XOOM Energy his energy costs would consistently be [5 to 10 percent] cheaper than his energy

costs with [the local utility company]." *Id.* at ¶ 8. He switched providers to XOOM Energy New

Jersey but he was charged over $555 more over the course of 2014—a 91 percent increase over

what he would have been charged during that year had he remained a customer of the local

utility company. *Id.*

      Ms. Donnellon, a Maryland resident, was approached at her home by an ACN IBO

named Blain in or around October 2014 who "showed [her] XOOM Energy brochures detailing

XOOM's rates and purported savings, and informed . . . [Ms.] Donnellon that XOOM's rates

were lower than [hers] . . . ." *Id.* at ¶ 7. The IBO promised that if Ms. Donnellon switched

providers to XOOM, her energy bills "would be consistently cheaper" than if she remained a

customer of the local utility company. *Id.* Ms. Donnellon switched providers to XOOM Energy

Maryland in or around October 2014, and by December 2014, her bill "began to substantially

rise due to the spike in XOOM's rates" which were 35 percent higher than the local utility

company's rates in December 2014 and continued to increase to 70 percent higher by February

2015. *Id.*

Plaintiffs initiated this action on January 16, 2015, alleging various claims against

XOOM Energy, ACN, XOOM Energy Maryland, and XOOM Energy New Jersey. *See* ECF No.

1; ECF No. 33 at ¶¶ 6, 8. On March 4, 2015, XOOM Energy New Jersey filed a Motion to

Dismiss for Lack of Personal Jurisdiction, ECF No. 25, and all Defendants filed a Motion to

Dismiss for Failure to State a Claim, ECF No. 26.

On March 25, 2015, Plaintiffs filed an Amended Complaint raising claims against only

XOOM Energy, ACN, and XOOM Energy Maryland on behalf of a proposed class, and two

subclasses. The proposed class includes:

> All persons who are or have been Simpleflex XOOM Energy customers in
> California, Connecticut, Delaware, Illinois, Indiana, Kentucky, Maine, Maryland,
> Massachusetts, Michigan, New Hampshire, New Jersey, New York, Ohio,
> Pennsylvania, Rhode Island, Texas, Virginia and any other locations where
> XOOM markets energy who (1) used XOOM as their electricity supplier, and (2)
> used XOOM as their natural gas supplier.

ECF No. 33 at ¶ 30. The two proposed subclasses include, in a "New Jersey Subclass," "[a]ll

persons who are or have been Simpleflex customers of XOOM Energy, New Jersey, LLC" and,

in a "Maryland Subclass," "[a]ll persons who are or have been Simpleflex customers of XOOM

Energy, Maryland, LLC." *Id.*

The Amended Complaint alleges seven counts: (1) violation of the Maryland Consumer

Protection Act ("MCPA"), Md. Code, Com. Law §§ 13-101, *et seq.,* on behalf of the Maryland

Subclass, (2) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§

56:8-1, *et seq.*, on behalf of the New Jersey Subclass, (3) violation of the North Carolina Unfair

and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.*, on behalf of the New

Jersey Subclass,[2] (4) breach of contract and the covenant of good faith and fair dealing on behalf

of all classes, (5) common law fraud, including fraudulent inducement and fraudulent

---

[2] The Amended Complaint alleges that "Defendants' New Jersey Simpleflex Terms and Conditions contain a North
Carolina choice of law provision." *Id.* at ¶ 67 n.12.

concealment on behalf of all classes, (6) negligent misrepresentation on behalf of all classes, and (7) unjust enrichment on behalf of all classes. *See id.* at ¶¶ 37–108. Defendants moved to dismiss all counts of the Amended Complaint on April 27, 2015. ECF No. 37.

## II.    PLAINTIFFS' MOTION FOR LEAVE TO FILE A SURREPLY

Although not chronological, the first issue to be considered is Plaintiffs' Motion for Leave to File Surreply. By way of background, in support of their Motion to Dismiss, Defendants attached three exhibits which they contend represent the written contracts between each of the named Plaintiffs and XOOM Energy Maryland or XOOM Energy New Jersey, though each is unsigned and undated. *See* ECF Nos. 37-2, 37-3 & 37-4. Because those contracts explicitly provided that Plaintiffs were entering variable-rate plans in which Plaintiffs' energy prices could change from month-to-month, Defendants contend that most, if not all, of Plaintiffs' claims are contradicted by the plain language of the contracts they entered. *See* ECF No. 37-1 at 18–20.[3] Specifically, the purported agreement between Mr. Todd and XOOM Energy New Jersey provided: "Your rate for energy purchases will be a variable rate, per kilowatt, that may change on a monthly basis . . . . Your monthly variable rate is based on XOOM's actual and estimate supply costs . . . ." ECF No. 37-2 at 2. The agreement between Mr. Bonicos and XOOM Energy New Jersey contained an identically-worded provision. ECF No. 37-3 at 2. Ms. Donnellon's purported contract with XOOM Energy Maryland, however, was even more explicit. It provided:

> Your monthly variable price is based on XOOM's actual and estimated supply costs . . . . You agree and understand that the price can fluctuate from month-to-month *and could be higher or lower than your Local Utility's standard offer rate in any given month*, and that XOOM cannot guarantee savings over your Local Utility's rates for . . . any given month for the entire term of this Agreement.

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

ECF No. 37-4 at 2 (emphasis added).

In their response in opposition to Defendants' Motion, Plaintiffs argued that the Court should disregard the purported written contracts because they are "unsigned, undated, and unaccompanied by a sworn declaration or affidavit averring that they are authentic reproductions of contracts actually entered into by Plaintiffs and Defendants." ECF No. 40 at 12. Additionally, each Plaintiff filed a declaration along with the opposition to the Motion to Dismiss in which they each stated that, to their knowledge, they never "assented to, or even received, the [written] contract[s]" attached to Defendants' Motion. ECF Nos. 40-6, 40-7 & 40-8.

In their reply memorandum, Defendants argued that Plaintiffs' averments are "implausible" and they attached more exhibits purporting to show the authenticity of those written agreements. ECF No. 43 at 10; *see also* ECF Nos. 43-1, 43-2 & 43-3. Specifically, Defendants filed a certified copy of XOOM Energy New Jersey's "form Terms and Conditions" that are on file with the New Jersey Board of Public Utilities, ECF No. 43-1, and a certified copy of the "XOOM-MD Simpleflex Terms and Conditions" that were filed with the Maryland Public Service Commission (the "Commission") in response to an Order to Show Cause from that agency to XOOM Energy Maryland with respect to an investigation that the Commission had initiated against XOOM Energy Maryland. ECF No. 43-2. Defendants argue that these exhibits, because they are matters of public record, are subject to judicial notice and are self-authenticating and that, because the terms and conditions in these exhibits match those attached to Defendants' Motion to Dismiss, these documents establish the authenticity of the purported contracts between Plaintiffs and the XOOM entities. ECF No. 43 at 11–12.

After filing their reply memorandum, Defendants also filed a Notice of Supplemental Authority in support of their Motion to Dismiss. ECF No. 44. Plaintiffs thereafter filled a Motion

7

for Leave to File a Surreply, which Defendants oppose, seeking to respond to Defendants' arguments with respect to the written contracts, as well as to address Defendants' supplemental authority. *See* ECF Nos. 45 & 46.

"As a general rule, this Court will not allow parties to file [surreplies]." *See Nicholson v. Volkswagen Grp. of Am., Inc.*, No. CIV.A. RDB-13-3711, 2015 WL 1565442, at *3 (D. Md. Apr. 7, 2015) (citing Local Rule 105.2(a) (D. Md.)); *MTB Servs., Inc. v. Tuckman–Barbee Const. Co.*, No. 1:12-cv-02109-RDB, 2013 WL 1224484, *6 (D. Md. Mar. 26, 2013)). In *MTB Services*, the Court explained that a "party moving for leave to file a surreply must show a need for a surreply." *Id.* (internal citation omitted). But the Court may permit a plaintiff to file a surreply if "a defendant raises new legal issues or new theories in its reply brief." *Id.* (citing *TECH USA, Inc. v. Evans,* 592 F.Supp.2d 852, 862 (D. Md. 2009)). Even further, "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *MTB Servs.*, 2013 WL 1224484 at *6; *see also Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md.2003).

Defendants did raise new issues with respect to the authenticity of the purported written contracts in their reply memorandum, so the Court will consider Plaintiffs' surreply memorandum with respect to this issue. The Court will, however, ignore Plaintiffs' arguments— and Defendants' responses thereto—regarding Defendants' Notice of Supplemental Authority. The Notice—which only provides the Court with a citation to a case decided after Defendants filed their reply memorandum and which was unaccompanied by any argument—is not the sort of "new" legal issue that requires response in a surreply. Indeed, Plaintiffs have since filed their own notices of supplemental authority, and Defendants have filed a second notice, without a request by either party for leave to engage in supplemental briefing of the issues before the

8

Court. Thus, Plaintiffs' Motion for Leave to File a Surreply is granted, in part, and denied, in part.

## III.    MOTION TO DISMISS

### A.  Standard of Review

Defendants have moved to dismiss Plaintiff's Complaint on the ground that the Complaint fails to state a claim upon which relief can be granted. When deciding a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," and "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But to survive a motion to dismiss invoking Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must be more than "labels and conclusion . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555; *see also id.* ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, 235–36 (3d ed. 2004)). A complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

9

alleged." *Iqbal*, 556 U.S. at 663. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *See id.* at 679 (citing Fed. Rule Civ. Proc. 8(a)(2)).

Furthermore, "[w]hen a plaintiff alleges fraud or when 'the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud,' [Federal Rule of Civil Procedure] 9(b) requires that 'the circumstances constituting fraud be stated with particularity.'" *Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009) (quoting *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000); Fed. R. Civ. P. 9(b)). To satisfy this standard, plaintiffs "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks and citation omitted). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *Id.* (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)).

### B.  Written Contracts

In their Motion to Dismiss, Defendants rely heavily on the purported written contracts between Plaintiffs and XOOM Energy Maryland and XOOM Energy New Jersey. Plaintiffs, as previously indicated, ask this Court to disregard those written contracts at this stage. Because the Court's resolution of this dispute will impact much of the analysis that follows, the Court will first address whether those contracts may properly be considered as part of Defendants' Motion to Dismiss.

10

In general, extrinsic evidence should not be considered at the motion to dismiss phase when the motion challenges the legal sufficiency of a complaint under Rule 12(b)(6), unless the Court chooses to convert the motion into one for summary judgment and provides the parties with a "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). However, when a defendant attaches a document to its motion to dismiss, "a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Id.* (internal quotation marks omitted) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). The rationale for this exception "is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated [w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Id.* (internal quotation marks and citation omitted). By allowing a defendant to attach a document to a motion to dismiss, the Court can "prevent . . . the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent." *Id.* (internal quotation marks and citation omitted).

Here, however, Plaintiffs do challenge the authenticity of these contracts; specifically, they contend that they never received them, nor assented to their terms. ECF Nos. 40-6, 40-7 & 40-8. Although Defendants argue that the contracts are self-authenticating because the same terms and conditions appear in certain documents that are matters of public record, the fact that such terms and conditions are publically available elsewhere does not establish that Plaintiffs

ever assented to them.[4] *Cf. Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 617–18 (D. Md. 2014) (distinguishing *American Chiropractic* and declining to dismiss negligent misrepresentation claim based on extrinsic evidence where plaintiff submitted an affidavit contending she never received the document). Additionally, although the Court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment, *see Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499 (2007)), the fact that certain documents are matters of public record subject to judicial notice does not, in and of itself, establish the legal effect such a document should have on the Parties before the Court. *Cf. Sher v. Luxury Mortgage Corp.*, No. CIV.A. ELH-11-3656, 2012 WL 5869303, at *7 (D. Md. Nov. 19, 2012) (noting that "courts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted . . . , but rather to establish the fact of such litigation and related filings"). The Court, therefore, will not consider the contracts submitted in support of Defendants' Motion to Dismiss and will only consider whether the facts alleged in the Complaint, in and of themselves, are sufficient to state a plausible claim for relief.

---

[4] Defendants also suggest that Plaintiffs, or their counsel, may be subject to sanctions under Federal Rule of Civil Procedure 11 if the challenge to the authenticity of these contracts was not made in "good faith." *See* ECF No. 43 at 12. Defendants cite *Kelly v. Wolpoff & Abramson, LLP*, 634 F. Supp. 2d 1202, 1211 (D. Colo. 2008), in which the court noted, referencing a prior order in the same case, that the "[p]laintiff may have exposed herself to Rule 11 sanctions by objecting to the authenticity of various documents without rational basis in an attempt to force the court's denial of Defendant's motion to dismiss." *Id.* (internal quotation marks omitted). The Court will not, however, assume bad faith on the part of Plaintiffs or Plaintiffs' counsel simply because, according to Defendants, "commonsense" suggests that the written contracts control. *See* ECF No. 46 at 3. Notably, Defendants have not pointed the Court to any evidence indicating that Plaintiffs did receive and assent to these unsigned contracts, beyond noting that in Maryland and New Jersey, "parties may enter into energy-supply contracts on-line without a signature pursuant to the Uniform Electronic Transactions Act." ECF No. 43 at 13 (footnotes omitted). That may be so, but, again, does not mean that Plaintiffs did so here. Discovery, however, may disclose that they had. As this case proceeds, if the Parties agree that the issue of whether the written contracts are controlling is one that will dispose of Plaintiffs' claims, the Court is open to a bifurcated discovery process in which the Parties can first assess the governance of the written agreements, followed by an initial round of motions for summary judgment, before proceeding to discovery as to any other pertinent issues.

### C.  Choice of law

As another preliminary matter, the Court notes that different state laws will apply to different claims in this case. "In a diversity case, a district court applies the conflict-of-law rules of the state where it sits." *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 807 (4th Cir. 2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020 (1941)). "[U]nder Maryland choice-of-law rules a contractual claim (including a claim for quantum meruit or unjust enrichment) is governed by the law of the place where the contract is made, which is the place where the last act required to make a contract binding occurs." *Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505, 521 n.16 (D. Md. 2004) (citing *Konover Prop. Trust, Inc. v. WHE Associates, Inc.*, 790 A.2d 720, 728 (Md. Ct. Spec. App. 2002)). Here, the Parties seem to agree that Maryland law controls Ms. Donnellon's contract claims, while New Jersey law controls Messrs. Todd and Bonicos' contract claims. *See* ECF No. 37-1 at 23; ECF No. 40 at 14–23 (applying Maryland and New Jersey law).

As for Plaintiffs' tort claims, in Maryland, the principle of lex loci delicti commissi, or the law of the place of the harm, applies. *See DiFederico*, 714 F.3d at 807 (citing *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999)). This means the applicable law is the law of "the state where the last event necessary to make an actor liable for an alleged tort takes place." *Id.* (citing *Wells*, 186 F.3d 521; Restatement (First) of Conflict of Laws § 377 (1934)). "[A] claim for the tort of fraud is governed by the law of the place where the injury occurred . . . ." *Harte-Hanks*, 299 F. Supp. 2d at 528 n.27 (citing *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 233 n.28 (Md. 2000)). Here, each Plaintiff seeks recovery for the prices they paid for energy as a result of Defendants' allegedly fraudulent conduct and thus, their injury is alleged to have occurred where they live.

So, once again, Ms. Donnellon's tort claims must be controlled by Maryland law, while Messrs. Todd and Bonicos' claims will be governed by New Jersey law.

### D. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing (Count IV)

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001); *accord Accurate Abstracts, LLC v. Havas Edge, LLC*, No. 14-CV-1994 (KM)(MAH), 2015 WL 5996931, at *4 (D.N.J. Oct. 14, 2015) (citing *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) ("Under New Jersey law, the elements of a breach of contract are that: (1) The parties entered into a valid contract; (2) the defendant failed to perform its contractual obligation; and as a result (3) the plaintiff sustained damages."). To establish the existence of a binding contract, a plaintiff must allege "an offer and an acceptance, and . . . a meeting of the minds as to the essential terms of the contract." *ABT Assocs., Inc. v. JHPIEGO Corp.*, 9 F. App'x 172, 176 (4th Cir. 2001) (citing S*afeway Stores, Inc. v. Altman*, 463 A.2d 829, 831 (Md. 1983)); *accord Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) ("A contract arises from offer and acceptance, and must be sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty." (internal quotation marks and citations omitted)). Additionally, "[a] concept central to American contract law is that 'absent a statute to the contrary, an oral offer and acceptance constitutes a binding agreement.'" *Decosta v. English*, No. CIV.A. 11-2651 MAH, 2012 WL 528760, at *6 (D.N.J. Feb. 16, 2012); *see also Lopez v. XTEL Const. Grp., LLC*, 796 F. Supp. 2d 693, 699 (D. Md. 2011) ("[T]he agreement exists once offer, acceptance, and consideration are exchanged between the parties,

regardless of whether the agreement is oral or written." (internal quotation marks and citation omitted)).

It is also true, however, that "[a]s a general rule, 'a contract cannot be enforced by or against a person who is not a party to it.'" *Cecilia Schwaber Tr. Two v. Hartford Acc. & Indem. Co.*, 437 F. Supp. 2d 485, 489 (D. Md. 2006) (quoting *Crane Ice Cream Co. v. Terminal Freezing & Heating Co.*, 128 A. 280, 281 (Md. 1925)). Here, Defendants argue that Plaintiffs have failed to state a claim for breach of contract against Defendants XOOM Energy and ACN. Rather, they argue, the Amended Complaint only alleges that Ms. Donnellon entered an energy-supply contract with XOOM Energy Maryland and that Messrs. Todd and Bonicos entered energy-supply contracts with XOOM Energy New Jersey, which is not a party to this lawsuit. ECF No. 37-1 at 25–26.

In the Amended Complaint, Mr. Todd alleges that, after being promised low prices by an ACN IBO, he "switched his energy supplier from [the local utility company] to XOOM [Energy New Jersey]." ECF No. 33 at ¶ 6. Mr. Bonicos' allegation is similar. *Id.* at ¶ 8. Ms. Donnellon alleges that she switched energy suppliers to XOOM Energy Maryland. *Id.* at ¶ 7. In their response in opposition to Defendants' Motion to Dismiss, however, Plaintiffs argue that the Amended Complaint "alleges that, through the IBO-agents, Plaintiffs contracted with XOOM for energy services which it provided through its subsidiaries, the day-to-day operations over which XOOM exercises control." ECF No. 40 at 17. Plaintiffs contend that these facts support their claim for breach of contract against not only the XOOM subsidiaries, but also against XOOM Energy, "as well as its [corporate] parent, ACN." *Id.*

The Amended Complaint is far from clear, however, with respect to whether XOOM Energy or ACN were parties to any of the oral contracts formed between Plaintiffs and the

XOOM subsidiaries, XOOM Energy Maryland and XOOM Energy New Jersey. Although the Court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff," *E.I. du Pont*, 637 F.3d at 440, Plaintiffs have alleged no facts suggesting that they entered a binding contract with any entity other than XOOM Energy Maryland or XOOM Energy New Jersey, with whom they provided mutual consideration of the exchange of promises to provide monthly payments in exchange for a supply of energy.

Plaintiffs suggest in a footnote, however, that, even if the Court concludes that XOOM Energy and ACN were not parties to the oral contracts, that they should be held liable for their subsidiaries' breach of those contracts through the "direct participation doctrine." ECF No. 40 at 17 n.8. In support of that theory, Plaintiffs cite *Pearson v. Component Technology Corp.*, 247 F.3d 471 (3d Cir. 2001), in which the Court stated:

> [I]t has long been acknowledged that parents may be "directly" liable for their subsidiaries' actions when the "alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management," and the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised by a parent as an incident of ownership.

*Id.* at 487 (quoting *United States v. Bestfoods*, 524 U.S. 51, 64, 118 S.Ct. 1876 (1998)). Notably, however, *Pearson* arose in the context of a labor relations dispute involving interpretation of the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. § 2101 et seq., and Plaintiffs have not cited, nor has the Court identified, any cases applying the "direct participation doctrine" in a breach of contract case. And logic would seem to dictate against extending that doctrine to a breach of contract claim because to do so would "make a corporation that is not a signatory to a contract a de facto party to the contract." *Cima v. WellPoint Health Networks, Inc.*, 556 F. Supp. 2d 901, 906 (S.D. Ill. 2008); *see also Northbound Grp., Inc. v. Norvax, Inc.*, 795

F.3d 647, 651 (7th Cir. 2015) ("Illinois courts have applied this theory of direct participation to torts or violations of statutes, not to breaches of contract."); *cf. Frey v. Workhorse Custom Chassis, LLC*, No. 1:03-CV-1896-DHF-VSS, 2006 WL 1750247, at *6 n.2 (S.D. Ind. June 21, 2006) (acknowledging that corporate officer may be individually liable for a crime or tort under direct participation theory, but noting "[t]hose doctrines do not apply here, where all the claims are for breach of contract or are closely analogous to such claims"). Thus, Plaintiffs' breach of contract claims against XOOM Energy and ACN must be dismissed, and, because XOOM Energy New Jersey is not a party to this action, Messrs. Todd and Bonicos' breach of contract claims cannot proceed.

That leaves Ms. Donnellon's breach of contract claim against XOOM Energy New Jersey. Defendants only argument with respect to this claim is that the purported written contract does not require that she be charged at a rate that is less than or equal to her local utility's rates. ECF No. 37-1 at 26–27. Because, as already stated, the Court is not considering the written agreements in conjunction with the present Motion, Ms. Donnellon's breach of contract claim will survive Defendants' Motion to Dismiss.

Finally, to the extent that Ms. Donnellon alleges breach of the implied covenant of good faith and fair dealing, that claim must be dismissed.[5] Under Maryland law, this duty "simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract, but does not require affirmative action not mandated by the contract." *Eaglehead Corp. v. Cambridge Capital Grp., Inc.*, 170 F. Supp. 2d 552, 562 (D. Md. 2001) (quoting *Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md. Ct. Spec.

---

[5] Although Plaintiffs briefed this argument separately from their breach of contract claim, the allegations regarding the implied covenant of good faith and fair dealing are plead in the Amended Complaint as part of Plaintiffs' allegations of breach of contract. ECF No. 33 at ¶¶ 80–87. "This is not surprising because Maryland does not recognize a separate cause of action for the breach of implied duty of good faith and fair dealing." *Eaglehead Corp. v. Cambridge Capital Grp., Inc.*, 170 F. Supp. 2d 552, 562 (D. Md. 2001).

App. 1992)). The Amended Complaint lacks any factual allegations suggesting that XOOM Energy Maryland prevented Ms. Donnellon from performing her obligations under the contract.

### E. Unjust Enrichment (Count VII)

Plaintiffs' unjust enrichment claims against XOOM Energy and ACN must fail for the same reasons their contract claims fail against those defendants; Plaintiffs have not alleged that they have conferred any benefit on these defendants. Thus, the only issue left to consider with respect to Count VII of the Amended Complaint is whether Ms. Donnellon's unjust enrichment claim against XOOM Energy Maryland states a plausible claim for relief. A claim for unjust enrichment under Maryland law "requires that a plaintiff show . . . that the defendant retained a benefit conferred by the plaintiff 'under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.'" *Bowers v. Bank of Am., N.A.*, 905 F. Supp. 2d 697, 703 (D. Md. 2012) (quoting *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007)). There are no facts alleged in the Amended Complaint suggesting that XOOM Energy Maryland failed to supply Ms. Donnellon with the energy source for which she contracted. Thus, even if the charges for that supply breached the parties' contract, any payments Ms. Donnellon made to XOOM Energy Maryland do not constitute unjust enrichment. *See id.* ("The only benefit [plaintiff] has pled that he conferred on [defendant] is the value of his mortgage payments and interest, which were conferred in exchange for his home, property he apparently continues to own. Thus, he has not pled that [defendant] is retaining any benefit inequitably, and he does not state a plausible claim for unjust enrichment."); *see also Slack v. Suburban Propane Partners, L.P.*, No. CIV.A. 10-2548 JLL, 2010 WL 3810870, at *6 (D.N.J. Sept. 21, 2010) ("Because Plaintiffs received the propane they paid for, Plaintiffs have failed to a state a claim for unjust enrichment which is plausible on its face." (citation omitted)).

18

**F. Fraud, Maryland Consumer Protection Act, and New Jersey Consumer Fraud Act (Counts I, II, V)**

Under Maryland law, a plaintiff may bring a claim for common law fraud based on either

an affirmative misrepresentation or for fraudulent concealment. To state a claim for fraud based

on an affirmative misrepresentation, a plaintiff must allege that:

> (1) a representation made by a party was false; (2) its falsity was either known to
> the party or made with such reckless indifference to the truth to impute
> knowledge; (3) the misrepresentation was made for the purpose of defrauding
> some other person; (4) that person reasonably acted in reliance upon the
> misrepresentation with full belief in its truth, and he would not have done the
> thing from which damage resulted had it not been made; and (5) the person so
> acting suffered damage directly resulting from the misrepresentation.

*Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 545–46 (4th Cir. 1987) (citation

omitted). A claim for fraudulent concealment is made when a plaintiff alleges the following

elements:

> (1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the
> defendant failed to disclose that fact; (3) the defendant intended to defraud or
> deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the
> concealment; and (5) the plaintiff suffered damages as a result of the defendant's
> concealment.

*My Nat. Tax & Ins. Servs., Inc. v. H & R Block Tax Servs., Inc.*, 839 F. Supp. 2d 816, 820 (D.

Md. 2012) (quoting *Green v. H & R Block, Inc.*, 735 A.2d 1039, 1059 (Md. 1999)). In the case of

fraudulent concealment, where there is no fiduciary relationship between the parties, a plaintiff

"must prove that the defendant took affirmative action to conceal the cause of action and that the

plaintiff could not have discovered the cause of action despite the exercise of reasonable

diligence." *Id.* (quoting *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 275 (Md. 2007)).

The elements of a fraud claim under New Jersey law are similar. To state a claim for

"fraudulent inducement" a plaintiff must allege: "(1) a material misrepresentation of a presently

existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that

the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damages."

*Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J.), *aff'd*, 172 F.3d 859 (3d Cir. 1998).

And to prove fraudulent concealment, "the plaintiff must show that the defendant was silent in

the face of an obligation to disclose certain facts . . . ." *Id.* at 435 n.14 (citing *Baldasarre v.*

*Butler*, 604 A.2d 112 (N.J. Super. Ct. App. Div.1992), *aff'd in part, rev'd in part*, 625 A.2d 458

(N.J. 1993)).

      Under the law of both states, [a] statement that is "vague and indefinite in its nature and

terms" cannot support a fraud claim. *Goldstein v. Miles*, 859 A.2d 313, 332 (Md. Ct. Spec. App.

2004) (quoting *Buschman v. Codd*, 52 Md. 202, 207 (1879)); *see also Parker v. Columbia Bank*,

604 A.2d at 528 ("In order to constitute a 'false representation,' a statement must be a

misrepresentation of material fact. It cannot be an 'estimate' or 'opinion,' or 'puffing.'"

(citations omitted)); *accord Alexander*, 991 F. Supp. at 435 ("Statements as to future or

contingent events, to expectations or probabilities, or as to what will or will not be done in the

future, do not constitute misrepresentations, even though they may turn out to be wrong.

Similarly, statements that can be categorized as 'puffery' or 'vague and ill-defined opinions' are

not assurances of fact and thus do not constitute misrepresentations.").

      As stated previously, fraud claims must meet the heightened pleading standard of Rule

9(b), which requires that "the circumstances constituting fraud be stated with particularity."

*Haley*, 659 F. Supp. 2d at 721 (citation omitted). And, "[w]hen a complaint alleges fraud against

multiple defendants, Rule 9(b) requires that the plaintiff identify each defendant's participation

in the alleged fraud." *Id.* (citing *Adams*, 193 F.R.D. at 250); *accord MDNet, Inc. v. Pharmacia*

*Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005) ("When multiple defendants are involved, the

complaint must plead with particularity by specifying the allegations of fraud applying to each

defendant."); *John Wiley & Sons, Inc. v. Rivadeneyra*, No. CIV. 13-1085 FSH JBC, 2013 WL

6816369, at *6 (D.N.J. Dec. 20, 2013) ("[W]here multiple defendants are involved, the

complaint should inform each defendant of the nature of his alleged participation in the fraud.").

"This principle extends to allegations of fraud on the basis of an agency relationship:

[C]onclusory assertions that one defendant controlled another, or that some defendants are guilty

because of their association with others, do not inform each defendant of its role in the fraud and

do not satisfy Rule 9(b)." *Haley*, 659 F. Supp. 2d at 721 (internal quotation marks and citations

omitted).

Defendants challenge Plaintiffs' fraud claims on multiple grounds. First, they argue that

the alleged misrepresentations were contradicted by the terms of the written contracts, an

argument that, as already discussed, the Court will not consider at this juncture. Next,

Defendants argue that the alleged misrepresentations were nothing more than immaterial,

nonactionable "puffing." And finally, they argue that Plaintiffs have failed to plead their fraud

claims with particularity. ECF No. 37-1 at 35–41. Of these arguments, the Court is only

persuaded by the final one.

It is a close question, but, despite Defendants' efforts to diffuse the alleged

misrepresentations as "puffery," the statements alleged by Plaintiffs are sufficiently material

such that, at this stage, the Court cannot conclude as a matter of law that the statements would

not have induced Defendants' customers' reliance.[6] *Cf. Syncsort Inc. v. Sequential Software,*

*Inc.*, 50 F. Supp. 2d 318, 341 (D.N.J. 1999) ("In contrast to 'misdescriptions or false

---

[6] Notably, this is not a case involving two sophisticated businesses or corporations dealing at arms-length. It is a case wherein ordinary consumers are alleged to have relied on statements made as part of a sophisticated marketing scheme designed to induce them to act. *Compare Steigerwald v. Bradley*, 136 F. Supp. 2d 460, 470 (D. Md. 2001) ("*As an experienced businessman*, Mr. Steigerwald should not have accepted Mr. Ewing's statement as more than an opinion . . . .") *with Hammer v. Vital Pharm., Inc.*, No. CIV.A. 11-4124, 2012 WL 1018842, at *7 (D.N.J. Mar. 26, 2012) ("Advertising that amounts to 'mere' puffery is not actionable because *no reasonable consumer* relies on puffery. The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions." (emphasis added)).

representations' . . . mere puffing does not induce reliance on its exaggerated claims." (citations omitted)). Plaintiffs allege that Defendants "promised" that their energy bills "would be consistently cheaper" than what each Plaintiff was then paying. ECF No. 33 at ¶¶ 6–7. And, in Mr. Bonicos' case, he was promised prices that would be consistently 5 to 10 percent less than he was then paying. *Id.* at ¶ 8. Plaintiffs allege that these representations concealed the fact that, after a brief introductory period, their rates would skyrocket. *Id.* at ¶¶ 16, 29.

Although couched in future terms, these statements were not the sort of vague or contingent predictions of future savings that would not justify a consumers' reliance on them. *See A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 795 F. Supp. 2d 365, 377 n.4 (D. Md. 2011) ("Some discrepancies [in price projections] . . . are so drastic that, even allowing for the unavoidable uncertainties of predicting the future, a juror could reasonably find that the defendant's projections were so far off as to suggest dishonest dealings."); *Becker v. Wells Fargo Bank, N.A., Inc.*, No. 2:10-CV-02799 LKK, 2011 WL 1103439, at *11 (E.D. Cal. Mar. 22, 2011), *report and recommendation adopted as modified*, No. CIV. S-10-2799 LKK, 2011 WL 3319577 (E.D. Cal. Aug. 1, 2011) ("In alleging fraud, there is an obvious difference between a statement that loan modification 'could' happen, and, on the other hand, representing that loan modification 'would' happen."). Plaintiffs allege that Defendants promised that their rates would be less than their local energy suppliers, notwithstanding that, "[i]n reality, after switching to XOOM as a supplier, consumers' energy bills increase dramatically."[7] ECF No. 33 at ¶ 16; *see Bell Atl. Network Servs., Inc. v. P.M. Video Corp.*, 730 A.2d 406, 417 (N.J. Super. Ct. App. Div.

---

[7] In their reply brief, Defendants argue that Plaintiffs have failed to allege any facts suggesting that Defendants "knew that the future price of energy would not be consistently cheaper than the future utility prices." ECF No. 43 at 27 (emphasis omitted). The Court disagrees. Plaintiffs allege a widespread scheme to induce customers to switch energy providers through a marketing campaign promising low prices. Given the ubiquitous nature of the alleged misrepresentations, *see* ECF No. 33 at ¶ 24 (collecting online consumer complaints), the Court believes that knowledge of falsity can be inferred from the facts alleged.

1999) (noting that material misrepresentations include "promises made without the intent to perform"); *Notch View Assocs. v. Smith*, 615 A.2d 676, 682 (N.J. Super. Ct. Ch. Div. 1992) ("[A] false representation of an existing intention, *i.e.*, a false state of mind with respect to a future event has been held to constitute actionable misrepresentation."). Thus, the alleged misrepresentations and omissions, if true, are sufficiently material and concrete to support a claim of fraud.

The Court must nevertheless dismiss Plaintiffs' fraud claims because Plaintiffs have failed to allege with particularity to whom these statements are attributable. In the Amended Complaint, Plaintiffs allege that ACN is a "marketing company" which uses a "network of independent sales agents known as IBOs" to provide "among other things, energy through XOOM Energy," while XOOM Energy "provides training materials and selling 'scripts' to advertise to their customers . . ." but that XOOM Energy Maryland and XOOM Energy New Jersey then actually supply the energy to consumers. *See* ECF No. 33 at ¶¶ 6–8, 10, 18. Plaintiffs further allege that XOOM Energy is the corporate parent of XOOM Energy Maryland and controls its "day-to-day operations."[8] *Id.* at ¶¶ 11–12. What is not clear, however, is how the statements by the IBOs are attributable to each Defendant. Are the IBOs agents of all three defendants? Are they agents of only ACN? Is ACN an agent of XOOM Energy or XOOM Maryland, or vice versa, or none of the above? Are all three defendants engaged in a conspiracy?[9] Did each Defendant aid and abet another's misrepresentation? If so, what facts

---

[8] In their response in opposition to Defendants' Motion to Dismiss, Plaintiffs contend that ACN is the "corporate parent" of XOOM Energy, *see* ECF No. 40 at 9, but the Amended Complaint is not entirely clear in this regard. ECF No. 33 at ¶ 10 (alleging that ACN is a "multi-level (i.e. pyramid) marketing company that provides, among other things, energy through XOOM Energy . . . .").

[9] *See, e.g.*, *Lloyd*, 916 A.2d at 284 (A claim for civil conspiracy requires proof of the following elements: 1) A confederation of two or more persons by agreement or understanding; 2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) Actual legal damage resulting to the plaintiff." (internal quotation marks and citations omitted)); *Farris v. Cty. of*

would support such a conclusion? Although Plaintiffs seek to have the Court assume that the alleged misrepresentations and fraudulent omissions are attributable to all three Defendants, the allegations in the Complaint are simply not clear as to how or why one would do so because Plaintiffs have alleged no facts with respect to how the three Defendants were each individually responsible for the statements made by the IBOs.[10] *See, e.g., Adams*, 193 F.R.D. at 250 ("Where a plaintiff is seeking to hold a defendant vicariously liable for the acts of its agents, it must allege the factual predicate for the agency relationship with particularity." (citation omitted)); *Snyder v. Dietz & Watson, Inc.*, 837 F.Supp.2d 428, 450 (D.N.J. 2011) (dismissing fraud claims where plaintiff "lump[ed] all three defendants together as having engaged in wrongful conduct without specifying which defendant was responsible for which actions"); *but see John Wiley & Sons*, 2013 WL 6816369, at *6 ("Plaintiffs have alleged that Defendant . . . was acting as an agent by making statements on behalf of each corporation . . . . Thus, if proved, Plaintiffs may be able to impute the alleged fraud to each corporate entity."). Because the Plaintiffs have failed to plead sufficient facts respecting the "who" of their fraud claim, this claim must be dismissed. *See United States ex rel. Wilson*, 525 F.3d at 379 (to state a claim for fraud under Rule 9(b), a plaintiff must plead with particularity the "who, what, when, where, and how" of the alleged fraud (citation omitted)); *Haley*, 659 F. Supp. 2d at 724 ("Th[e] undifferentiated assertion of fraud against multiple defendants is prohibited by Rule 9(b).").

*Camden*, 61 F. Supp. 2d 307, 330 (D.N.J. 1999) (specifying elements of claim of civil conspiracy and noting that "the conspiracy is not the gravamen of the charge, but merely a matter of aggravation, enabling the plaintiff to recover against all the defendants as joint tortfeasors. The actionable element is the tort which the defendants agreed to perpetrate and which they actually committed.").

[10] Plaintiffs appear to suggest that the mere existence of a corporate parent-subsidiary relationship is sufficient to hold each corporation liable for the alleged wrongs of another. *See* ECF No. 40 at 8–9, 17, 23. But "mere ownership of a subsidiary does not justify the imposition of liability on the parent." *Pearson*, 247 F.3d at 484. If Plaintiffs seek to hold ACN and Xoom Energy and the Xoom subsidiaries liable under the direct participation doctrine, they must allege facts demonstrating that the "alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management, and the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised by a parent as an incident of ownership." *Id.* at 487 (internal quotation marks omitted).

For the same reason, Plaintiffs' claims under the MCPA, Md. Code, Com. Law §§ 13-101, *et seq.*,[11] and the NJCFA, N.J. Stat. Ann. §§ 56:8-1, *et seq.*,[12] must be dismissed. Because Plaintiffs' claims under both of these statutes sound in fraud, they, too, are subject to the heightened pleading standard of Rule 9(b). *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 249 (D. Md. 2013), *aff'd*, 582 F. App'x 246 (4th Cir. 2014); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 296 (D.N.J. 2009). Thus, where the Court is unable to ascertain how each Defendant is responsible for the alleged misrepresentations, these statutory claims cannot proceed.

### G. North Carolina Unfair and Deceptive Trade Practices Act (Count III)

In their opposition to Defendants' Motion to Dismiss, rather than responding to the substance of Defendants' arguments, Plaintiffs stated that their claim for violation of the North Carolina Unfair and Deceptive Trade Practices Act is "hereby withdrawn." ECF No. 40 at 8 n.2. Defendants' Motion to Dismiss Count III of the Amended Complaint will therefore be granted, and this Count will be dismissed with prejudice.

---

[11] The MCPA prohibits covered businesses from deceiving or misleading consumers or fraudulently inducing purchases of goods and services; the definition of "unfair or deceptive trade practices" under the Act includes "[f]alse or misleading representation[s] of fact which concerns . . . a price in comparison to a price of a competitor or to one's own price at a past or future time." *See* Md. Code, Com. Law § 13-301. "A consumer bringing a private action under [Md. Code, Com. Law] § 13-408 must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 319 (D. Md.), *aff'd*, 584 F. App'x 135 (4th Cir. 2014) (citing *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012); *Lloyd*, 916 A.2d at 277).

[12] The NJCFA similarly prohibits "unconscionable commercial practice[s], deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. § 56:8-2 . "To state a cause of action under the [NJ]CFA, a plaintiff must allege: (1) an unlawful practice by the defendants; (2) an ascertainable loss by plaintiff; and (3) a causal nexus between the first two elements—defendants' allegedly unlawful behavior and the plaintiff's ascertainable loss." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 296 (D.N.J. 2009) (citing *Parker v. Howmedica Osteonics Corp.*, No. 07–02400(JLL), 2008 WL 141628, at *2 (D.N.J. Jan. 14, 2008); *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 176 (N.J. Super. Ct. App. Div. 2003)).

### H. Negligent Misrepresentation (Count VI)

Finally, Defendants seek dismissal of Plaintiffs' negligent misrepresentation claims. In

the Amended Complaint, Plaintiffs allege that "[u]nder the circumstances alleged, Defendants

owed a duty to Plaintiffs and the Class to provide them with accurate information regarding,

*inter alia*, the true nature of XOOM's energy rates and lack of energy cost savings." ECF No. 33

at ¶ 96. Plaintiffs further allege that Defendants "directly and/or through IBOs" misrepresented

the nature of XOOM's pricing. *Id.* at ¶ 97. As these claims do not sound in fraud, Plaintiffs'

negligent misrepresentation claims are not subject to the heightened pleading standards of Rule

9(b), and rather are subject to the more liberal pleading standard of Rule 8(a)(2).

To state a claim for negligent misrepresentation under Maryland law, a plaintiff must

show the following elements:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false
> statement; (2) the defendant intends that his statement will be acted upon by the
> plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on
> the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff,
> justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers
> damage proximately caused by the defendant's negligence.

*Lloyd*, 916 A.2d at 273. "In the context of negligent misrepresentation, the Maryland Courts hold

that where the failure to exercise due care creates a risk of economic loss only, 'an intimate

nexus between the parties [i]s a condition to the imposition of tort liability.' Such an intimate

nexus requires 'contractual privity or its equivalent.'" *Superior Bank, F.S.B. v. Tandem Nat.*

*Mortgage, Inc.*, 197 F. Supp. 2d 298, 320 (D. Md. 2000) (quoting *Weisman v. Connors*, 540

A.2d 783, 791 (Md. 1988)).

Maryland law controls Ms. Donnellon's negligent misrepresentation claim, and, for the

reasons previously stated, the facts alleged in the Amended Complaint only establish that Ms.

Donnellon was in contractual privity with XOOM Energy Maryland, and not with any other

26

Defendant. While that may be sufficient to establish that XOOM Energy Maryland owed Ms.

Donnellon, and other members of the Maryland Subclass, a duty of care, the Amended

Complaint does not suggest that the IBOs who made the alleged misrepresentations were agents

of XOOM Energy Maryland. *See* ECF No. 33 at ¶ 10. Thus, because it is not clear that the

alleged misrepresentations are attributable to the only Defendant which owed a duty of care to

Ms. Donnellon, her negligent misrepresentation claim must be dismissed.

Messrs. Todd and Bonicos' claims on behalf of the New Jersey Subclass are, however,

governed by the law of New Jersey. "Under New Jersey law, the elements of a negligent

misrepresentation claim are: (1) defendant negligently made a false communications of material

fact; (2) plaintiff justifiably relied upon the misrepresentation; and (3) the reliance resulted in an

ascertainable loss or injury." *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 251 (D.N.J.

2008). "A negligent misrepresentation claim may also be based on an omission where plaintiff

adequately pleads a duty to disclose." *Peruto v. TimberTech Ltd.*, No. CIV.A. 15-2166 JBS, 2015

WL 5089484, at *6 (D.N.J. Aug. 26, 2015). But, as with any negligence-based claim, the

defendant must owe a duty of disclosure to the plaintiff. *Prudential Ins. Co. of Am. v. Goldman,

Sachs & Co.*, No. CIV.A. 12-6590 SDW, 2013 WL 1431680, at *9 (D.N.J. Apr. 9, 2013) (citing

*Singer v. Beach Trading Co., Inc.*, 876 A.2d 885, 891 (N.J. Super. Ct. App. Div. 2005)). The

duty "need not be based on a special relationship; the guiding principle for the imposition of

liability is fairness to both the party making the representation and to the party aggrieved by its

dissemination." *Id.* (internal quotation marks and citation omitted). As the United States Court of

Appeals for the Third Circuit has noted, the "required duty of disclosure may . . . arise in any

situation called for by good faith and common decency." *Highlands Ins. Co. v. Hobbs Grp.,

LLC.*, 373 F.3d 347, 355 (3d Cir. 2004). But, in any event, that duty only extends to the

"particular plaintiff or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer [economic] damages from its conduct." *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 530 (D.N.J. 2008) (quoting *People Exp. Airlines, Inc. v. Consol. Rail Corp.*, 495 A.2d 107, 116 (1985)).

Under New Jersey law, therefore, the lack of contractual privity is not a barrier to Plaintiffs' negligent misrepresentation claim, and the Court concludes that Plaintiffs fall within the "identifiable class" with respect to whom Defendants knew or had reason to know were likely to suffer damages as a result of their alleged misrepresentations. Nevertheless, Messrs. Todd and Bonicos' claims cannot proceed against XOOM Energy because, once again, it is not clear how the alleged misrepresentations made by the IBOs are attributable to that Defendant. The Amended Complaint does, however, allege sufficient facts to suggest that the statements made by the IBOs could be attributable to ACN. *See* ECF No. 33 at ¶ 10 ("Defendant ACN . . . is a multi-level (i.e. pyramid) marketing company that provides, among other things, energy through XOOM Energy *using a network of independent sales agents known as IBOs*. (emphasis added)).[13] Thus, Messrs. Todd and Bonicos' negligent misrepresentation claim on behalf of the New Jersey Subclass can proceed against ACN only.[14]

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted, in part, and denied, in part. Specifically, Ms. Donnellon's breach of contract claim against XOOM Energy Maryland (Count IV) and Messrs. Todd and Bonicos' negligent misrepresentation claim against ACN

---

[13] Although sufficient to state a claim of negligent misrepresentation, more particularized facts regarding how ACN (or another defendant) directed the actions of the IBOs are necessary to state a claim sounding in fraud.

[14] Defendants again challenge Plaintiffs' negligent misrepresentation claim on the ground that the alleged statements were "puffery," *see* ECF No. 37 at 43, but the Court rejects this argument for the same reasons discussed with respect to Plaintiffs' fraud claims.

(Count VI) survive Defendants' Motion to Dismiss. Defendants' Motion is granted in all other respects. With the exception of Plaintiffs' claim under the North Carolina Unfair and Deceptive Trade Practices Act, which Plaintiffs indicate they have "withdrawn," ECF No. 40 at 8 n.2, the dismissal of Plaintiffs' claims is without prejudice, and the Court will give Plaintiffs the opportunity to amend their pleadings to cure these deficiencies, if possible. *See Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999) ("Amendment [of pleadings] should be refused only if it appears to a certainty that plaintiff cannot state a claim." (quoting 5A C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 360–67 (2d ed. 1990)). A separate Order follows.

Dated: February 22 , 2016

GEORGE J. HAZEL
United States District Judge