**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 FEB 16  P 4: 08

CLERK'S OFFICE
AT GREENBELT

BY_____

| | | |
|---|---|---|
| **MICHAEL TODD, *et al.*,** | * | |
| **Plaintiffs,** | * | |
| v. | * | **Case No.: GJH-15-0154** |
| **XOOM ENERGY MARYLAND, LLC** | | |
| ***et al.*,** | * | |
| **Defendants.** | * | |
| | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## MEMORANDUM OPINION

Plaintiffs Michael Todd, Jerome Bonicos, and Elizabeth Donnellon (collectively, "Plaintiffs") bring this purported class action for an alleged "bait-and-switch marketing scheme" perpetrated by Defendants XOOM Energy, LLC ("XOOM Energy" or "XOOM"), XOOM Energy Maryland ("XOOM Maryland"), and ACN, Inc., ("ACN") (collectively, "Defendants"). In the Court's previous Memorandum Opinion, ECF No. 50, the Court granted, in part, and denied, in part, Defendants' Motion to Dismiss for Failure to State a Claim, ECF No. 37, but allowed Plaintiffs to amend their Complaint. Plaintiffs filed a Second Amended Complaint on March 21, 2016. Now pending before the Court is Defendants' Motion to Dismiss Second Amended Complaint for Failure to State a Claim, ECF No. 59. A hearing on the motion was held on January 11, 2017. Local Rule 105.6 (D. Md.). For the following reasons, Defendant's Motion to Dismiss is granted, in part, and denied, in part.

## I.    BACKGROUND

### A. Factual Background

Defendant XOOM Energy is "a Delaware Limited Liability Company formed on March

15, 2011, with its principal place of business in Huntersville, North Carolina." ECF No. 57 ¶ 10.

XOOM Energy is an "unregulated retail electricity and natural gas provider, which, together with

its wholly-owned state subsidiaries, offers electric and gas services in unregulated markets

throughout the United States." *Id.* Defendant XOOM Maryland is a state subsidiary of XOOM

Energy, which "sells and supplies electricity and natural gas in Maryland." *Id.* ¶ 11. Defendant

ACN is a "North Carolina corporation with its principal place of business in Concord, North

Carolina." *Id.* ¶ 9. ACN is "a multi-level (i.e. pyramid) marketing company," which partners

with XOOM Energy to sell energy services to consumers through ACN's independent business

owners ("IBOs") and other sales channels. *Id.*

In their Second Amended Complaint ("SAC"), Plaintiffs allege that "using standardized

marketing and training materials, Defendants sell electric and gas [services] to consumers,

through a network of XOOM independent sales representatives employed by ACN." ECF No. 57

¶ 2. Plaintiffs further allege that "XOOM directly, and through its IBOs, represent to potential

customers that, if they switch to XOOM from their local, regulated utilities or other energy

suppliers, they will receive a low introductory rate on their energy bills, followed by purportedly

competitive market-based rates and savings on their energy bills." *Id.* However, after signing up

with XOOM, XOOM "unilaterally and without justification, raises the rates charged and

customers' utility bills increase unjustifiably." *Id.* Each named Plaintiff, as well as dozens of

"Online Customer Complaints" included in the SAC, tells a similar story.

Plaintiff Michael Todd is a resident of West Orange, New Jersey. ECF No. 57 ¶ 6. In or around May 2013, "Phil," an independent business owner ("IBO") from ACN, called Mr. Todd to discuss XOOM Energy. *Id.* IBO Phil promised Mr. Todd that if he switched from his current energy supplier to XOOM, "his energy bills would be consistently cheaper than what he was paying his local utility provider." *Id.* Subsequently, Mr. Todd switched his energy supplier from Public Service Electric & Gas ("PSE&G") to XOOM. *Id.* After a few months, Mr. Todd's energy bills "skyrocketed," substantially increasing each month. *Id.* Mr. Todd alleges that he was charged "86% higher in January 2014 and 128% higher in February 2014" by XOOM than he would have paid PSE&G during the same time period. *Id.* Plaintiff Jerome Bonicos, a resident of Waldwick, New Jersey, had a similar experience. ECF No. 57 ¶ 8. In or around January 2013, an IBO named "William" came to Mr. Bonicos' home. *Id.* IBO William told Mr. Bonicos that if he switched to XOOM, "his energy costs would consistently be 5-10% cheaper than his energy costs with PSE&G." *Id.* Mr. Bonicos subsequently switched to XOOM, and in 2014, Mr. Bonicos was charged $555.00 more over the year than had he stayed with PSE&G. *Id.*

Plaintiff Elizabeth Donnellon is a resident of Abingdon, Maryland. ECF No. 57 ¶ 7. In or around October 2014, "Blain," an IBO from ACN, visited Ms. Donnellon's home. *Id.* The IBO showed Ms. Donnellon "XOOM Energy brochures detailing XOOM's rates and purported savings." *Id.* The IBO promised Ms. Donnellon if she switched to XOOM, "her energy bills would be consistently cheaper than if she stayed with Baltimore Gas and Electric ("BGE")." *Id.* However, after switching to XOOM, Ms. Donnellon's energy bills "began to substantially rise due to the spike in XOOM's rates." *Id.* Ms. Donnellon's bills were 35% higher than BGE's rates in December 2014 and 70% higher than BGE rates in February 2015. *Id.*

3

### B. Procedural Background

Plaintiffs initiated this action on behalf of themselves and all other similarly-situated individuals on January 16, 2015, alleging various claims against XOOM Energy, XOOM Energy Maryland, XOOM Energy New Jersey, and ACN, Inc. ECF No. 1. Plaintiffs filed their First Amended Complaint ("FAC") on March 25, 2015, dropping claims against XOOM Energy New Jersey. ECF No. 33. In the FAC, Plaintiffs brought seven counts against the remaining three Defendants: (I) violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law §§ 13-101, *et seq.*; (II) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8-1, *et seq.*; (III) violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.*; (IV) breach of contract and the covenant of good faith and fair dealing; (V) common law fraud, including fraudulent concealment and fraudulent inducement; (VI) negligent misrepresentation; and (VII) unjust enrichment. Defendants moved to dismiss all counts of the FAC on April 27, 2015. ECF No. 37. The Court issued a Memorandum Opinion and Order on February 22, 2016, granting, in part, and denying, in part, Defendant's Motion to Dismiss.

With respect to the breach of contract claims in the FAC, only Ms. Donnellon's claim against XOOM Energy Maryland survived the Defendants' motion to dismiss, ECF No. 37. ECF No. 50 at 17. Plaintiffs' breach of contract claims against XOOM Energy and ACN were dismissed without prejudice. ECF No. 50 at 17. The Court held that, applying either Maryland or New Jersey law, XOOM Energy and ACN could not be liable under the alleged contracts because they were not "parties" to the contracts. *Id.* at 15. Plaintiffs now re-allege, and this

4

Memorandum Opinion will address, the breach of contract claims with respect to XOOM Energy and ACN in Count III of the SAC.[1] ECF No. 57 at 28–29.

Additionally, Plaintiffs' claims of common law fraud, violations of the Maryland Consumer Protection Act, and the New Jersey Consumer Fraud Act in the FAC were dismissed without prejudice.[2] ECF No. 50 at 19–25. The Court held that under the heightened pleading standard for fraud claims, pursuant to Fed. R. Civ. P. 9(b), Plaintiffs had failed to "state with particularity" to whom the statements of fraud were attributed, and thus, all claims under the common law and both consumer protection statutes were dismissed. *Id.* at 23. Plaintiffs now re-allege, and this Memorandum Opinion will address, the claims against all Defendants in Counts I (MCPA), II (NJCFA), and IV (common law fraud) of the SAC. ECF No. 57 at 24–28, 30–31.

Finally, with respect to the negligent misrepresentation claims, only Messrs. Todd and Bonicos' claims against ACN survived Defendants' Motion to Dismiss, ECF No. 37. ECF No. 50 at 28. Messrs. Todd and Bonicos' additional negligent misrepresentation claims against XOOM Energy Maryland and XOOM Energy, and Ms. Donnellon's negligent misrepresentation claim against all Defendants, were dismissed without prejudice. *Id.* at 26–28. Plaintiffs now re-allege, and this Memorandum Opinion will address, Messrs. Todd and Bonicos' negligent misrepresentation claims with respect to XOOM Energy Maryland and XOOM Energy, and Ms. Donnellon's negligent misrepresentation claims against all Defendants, in Count V of the SAC. ECF No. 57 at 28–29.

## II.    STANDARD OF REVIEW

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

---

[1] In the SAC, ECF No. 57, Plaintiffs do not re-allege the claims for breach of the covenant of good faith and fair dealing from Count IV in the FAC, or the unjust enrichment claim from Count VII. ECF No. 33.

[2] Plaintiffs' claim under the North Carolina Unfair and Deceptive Trade Practices Act was dismissed with prejudice.

Fed. R. Civ. P. 8(a)(2). In evaluating Defendants' Motion to Dismiss under Fed. R. Civ. P.

12(b)(6), the Court must accept all well-pleaded factual allegations of the complaint as true, and

derive all reasonable inferences in the light most favorable to the Plaintiffs. *See Ibarra v. United

States,* 120 F.3d 472, 474 (4th Cir.1997). To survive dismissal, "a complaint must contain

sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.

Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). However, a court need not accept a

plaintiff's legal conclusions as true, as "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.*

In claims "alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a

person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) requires "that a plaintiff

alleging fraud must make particular allegations of the time, place, speaker, and contents of the

allegedly false acts or statements." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 249–50 (D. Md.

2000); *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)

(describing the "who, what, when, where, and how of the fraud claim").

**III.   ANALYSIS**

### A.  Breach of Contract (Count III)

In Count III of the SAC, Plaintiffs allege that "Plaintiffs and all members of the Class

entered into contracts with XOOM pursuant to which it was to charge them for energy supplied,

purportedly at rates lower than those charged by Plaintiffs' local regulated utilities." ECF No. 57

¶ 80. "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Cinar v. Bank of America, N.A.*, No. 13-cv-3230-RWT, 2014 WL 3704280, \*4 (D. Md. July 22, 2014) (citing *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362 (2012)) (emphasis in original). Similarly, under New Jersey law, the plaintiff must prove that the parties entered into a valid contract, the defendant failed to perform its contractual obligation, and the plaintiff sustained damages as a result. *Accurate Abstracts, LLC v. Havas Edge, LLC*, No. 14-CV-1994 (KM)(MAH), 2015 WL 5996931, at \*4 (D.N.J. Oct. 14, 2015).

In the Court's prior Memorandum Opinion, the only Breach of Contract claim that survived was the claim brought by Plaintiff Donnellon against XOOM Maryland. The Court dismissed claims involving XOOM Energy and ACN based on its finding that Plaintiffs had not sufficiently alleged that XOOM Energy and ACN were parties to any contract with Plaintiffs. Having now reviewed the SAC, which reasserts the previous claims with additional allegations, and the Defendants' Motion to Dismiss, the Court sees two primary questions to be addressed as it relates to the Breach of Contact claims. First, should the Plaintiffs' claim that the contracts between the parties were, apparently, entirely oral lead to dismissal of the Breach of Contract claims based on the claimed implausibility of an oral contract for energy supply? This question was answered in the negative in the Court's prior Opinion, but changes in the allegations in the SAC make this an issue worth revisiting. Second, have the Plaintiffs now sufficiently alleged that each Defendant was a party to the agreement? The Court will address these questions in turn.

### i.    Oral Agreements

Defendants argue that "the notion of an 'oral' contract to supply energy . . . is wholly implausible." ECF No. 59-1 at 11. In support, they cite to Maryland and New Jersey state regulations that purportedly require energy suppliers to provide customers with written contracts. Md. Code Regs. 20.53.07.08(B)–(C) ("Supplier Contracts"); N.J. Admin. Code § 14:4-7.6. But while it may seem difficult to imagine a contract for energy supply that could be effectively offered and accepted without being reduced to a writing, in the context of the allegations in the SAC, it does not rise to the level of implausibility. Indeed, the entire premise of the case appears to be the notion that the IBOs made a fairly simplistic offer to the Plaintiffs: they would provide energy at cheaper rates than the Plaintiffs' current providers if the Plaintiffs switched providers. And there is support in the catalogue of customer complaints included in the SAC for the notion that the Defendants did, in fact, engage in agreements that were both oral, *see* ECF No. 57 at 12 ("I never had to sign anything and actually never even met with my so called friend in person to sign up for this SCAM service"), and bare-bones in nature, *id.* at 13 ("takes 3 minutes to sign up, 30 to 60 day(s) to cancel").

Additionally, the terms are sufficiently definitive, with XOOM Maryland supplying lower cost energy in exchange for Plaintiffs switching providers, "that the performance to be rendered by each party can be ascertained with reasonable certainty." *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992). Thus, because an "agreement exists once offer, acceptance, and consideration are exchanged between the parties, regardless of whether the agreement is oral or written," *Lopez v. XTEL Const. Grp., LLC,* 796 F. Supp. 2d 693, 699 (D. Md. 2011), the Court will not dismiss Plaintiffs' Breach of Contract claim solely because the contracts are alleged to have been oral.

8

### ii. Parties to the Contract

As the Court noted in its prior Opinion, as a general matter, a contract cannot be enforced against a person who is not a party to it. ECF No. 50 at 15 (citing *Cecilia Schwaber Tr. Two v. Hartford Acc. & Indem. Co.*, 437 F. Supp. 2d 485, 489 (D. Md. 2006)). In their previous Motion to Dismiss, Defendants argued that Plaintiffs had not alleged a contractual relationship with ACN and XOOM Energy but conceded there was a contract between Plaintiffs and XOOM Maryland. ECF No. 37-1 at 25. The Court agreed. Both the Court and Defendants cited to paragraph 7 of the FAC for the proposition that there did exist a contract with, at least, XOOM Maryland, as that paragraph stated that "Plaintiff Donnellon switched her energy supplier from BGE to XOOM MD in or around October 2014." ECF No. 33 ¶ 7. In the Court's view, this established a contractual link between Plaintiffs, as customers, and XOOM Maryland, as the entity contractually bound to supply Plaintiffs with low-cost energy.

Notably, however, in the SAC, Plaintiff removed the "MD" from this paragraph so that it now reads, "Plaintiff Donnellon switched her energy supplier from BGE to XOOM in or around October 2014."[3] Thus, it would appear that the Plaintiffs now seek to make the allegations increasingly vague in an effort to lead the Court to extend the finding of privity between Plaintiff Donnellon and XOOM Maryland to all Defendants. But the Court is not persuaded that merely shifting from a statement specifically identifying XOOM Maryland as the entity to whom Donnellon contracted with for her energy supply, to a more vague statement that it was the parties collectively defined as "XOOM," is sufficient to allege that ACN and XOOM Energy were also parties to the agreement.

---

[3] As the Court observed at the Motions Hearing, this change was not noted in the Plaintiffs' red-line version of the SAC. Given that this provision formed the basis of both the Defendants' and the Court's view that the contract was with XOOM Maryland, and only XOOM Maryland, it is surprising that this significant change was not red-lined as all other changes were. The Court will assume that the failure to highlight the change was an inadvertent error.

Additionally, the conclusion that XOOM Maryland was the entity in contractual privity with Plaintiff Donnellon as their customer, is consistent with provisions in the SAC indicating that "Xoom Energy Maryland, LLC . . . sells and supplies electricity and natural gas in Maryland," ECF No. 57 ¶ 11, and "XOOM MD supplied the overpriced energy to customers," *id.* ¶ 24. While Plaintiffs have added additional facts indicating the involvement of ACN and XOOM Energy in the solicitation of customers, including Plaintiffs, that information, while relevant to the fraud allegations, does not suffice to establish that there was a contractual relationship involving those parties. To the extent Plaintiffs have alleged any contractual relationship, it is between Plaintiff Donnellon, as customer, and XOOM Energy Maryland, as energy supplier.

Plaintiffs' argument that ACN and Xoom Energy should be held liable under a theory of apparent authority also fails. "To support a finding of apparent authority, both Maryland and New Jersey law require a showing that the principal's conduct created the appearance of the agent's authority, causing a third party to reasonably rely on that representation." *Ziemkiewicz v. R+L Carriers, Inc.,* 996 F. Supp. 2d 378, 401 (D. Md. 2014). Here, Plaintiffs have not alleged that they relied on a representation that they were entering into an agreement with ACN or XOOM Energy. Rather, the picture painted by Plaintiffs is one where the Plaintiffs were unclear as to which company they were entering into a contract with and were instead relying solely on promises of better prices and their relationships with the individual IBOs. Thus, Plaintiffs' agency argument fails. Plaintiff Donnellon's breach of contract claim with respect to XOOM Maryland survives Defendants' motion to dismiss. All other breach of contract claims are dismissed with prejudice.

## B. Fraud and Related Claims

Plaintiffs again assert claims for common law fraud, the Maryland Consumer Protection Act, and the New Jersey Consumer Fraud Act. ECF No. 57 at 24, 26, 30. The Court will discuss the elements of each claim and then analyze them jointly as the relevant issues overlap.

### i. Common Law Fraud (Count IV)

To state a claim for common law fraud, a plaintiff must allege "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 919 (D. Md. 2012).[4]

To constitute a false representation, "a statement must be a misrepresentation of material fact. It cannot be an estimate or opinion or puffing." *Daniyan v. Viridian Energy, LLC*, GLR–14–2715, 2015 WL 4031752, at *2 (D. Md. June 30, 2015). The elements for a claim of fraudulent concealment are: (1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment. *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 820 (D. Md. 2005); *accord Arcand v. Brother Intern. Corp.*, 673 F. Supp. 2d 282 (D.N.J. 2009). Both fraudulent representation and fraudulent

---

[4] Similarly, the elements of a claim for common law fraud in New Jersey are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damages. *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998); *Faistl v. Energy Plus Holdings, LLC*, Civil Action No. 12–2879, 2012 WL 3835815 (D.N.J. Sept. 4, 2012).

concealment are subject to the heightened pleading standard of Rule 9(b). *See Hill*, 383 F. Supp. 2d 814, 822–23.

### ii.   Maryland Consumer Protection Act (Count I)

The MCPA prohibits the commission of "unfair or deceptive trade practices," which includes making a "false . . . or misleading oral or written statement . . . or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" and "knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of any consumer goods . . . or consumer service . . ." Md. Code Ann., Com. Law § 13-301(1)–(9). To bring an action under the MCPA, the plaintiff must allege "(1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes the plaintiff actual injury." *Daniyan v. Viridian Energy, LLC*, GLR–14–2715, 2015 WL 4031752, at *1 (D. Md. June 30, 2015).

While claims of fraud under the MCPA are subject to the heightened pleading requirements of Rule 9(b), "omissions are not subjected to the heightened pleading standards of Rule 9(b) because such allegations cannot be described in terms of the time, place, and contents of the omission." *Daniyan v. Viridian Energy, LLC*, GLR–14–2715, 2015 WL 4031752, at *1 (D. Md. June 30, 2015) (citing *Marshall v. James B. Nutter & Co.*, 816 F. Supp. 2d 259, 267 (D. Md. 2011)); *see also Landau v. Viridian Energy PA LLC*, Civil Action No. 16-2383, 2016 WL 6995038 (E.D. Pa. Nov. 30, 2016) (noting that claims based on deception, not fraud, under the Pennsylvania Unfair Trade Practices and Consumer Protection Law need only satisfy the normal pleading standard of Rule 8(a)). Nonetheless, the MCPA does provide consumers with protection against "omissions of material fact" and "such omissions are material 'if a significant number of

unsophisticated consumers would find that information important in determining a course of action.'" *Daniyan*, 2015 WL 4031752, at *2.

Here, Plaintiffs claim that "Defendants violated the MCPA by failing to disclose that, on a consistent basis, XOOM's regular rates are substantially higher than its competitors and not competitive in the market." ECF No. 57 ¶ 58. Plaintiffs also claim that "Defendants violated the MCPA by failing to disclose to consumers that after the initial introductory period, XOOM's energy rates increased substantially and exceed those charged by regulated utilities." *Id.* ¶ 59. Thus, at least some of Plaintiffs' MCPA claims are subject not to the heightened pleading standard of Rule 9(b), but to the regular pleading standard of Rule 8(a).

### iii. New Jersey Consumer Fraud Act (Count II)

To state a claim under the NJCFA, Plaintiffs must allege sufficient facts to demonstrate: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 648 (D.N.J. 2013). Unlawful conduct is defined as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby.

N.J. Stat. Ann. § 56:8–2. "This broad definition of unlawful practice covers affirmative acts and knowing omissions." *Faistl*, 2012 WL 3835815, at *5 (D.N.J. Sept. 4, 2012). A claim under the NJCFA requires more than a breach of contract or breach of warranty; it requires "substantial aggravating circumstances." *Id.*; *Urbino v. Ambit Energy Holdings, LLC*, Civil Action No. 14–

5184 (MAS)(DEA), 2015 WL 4510201, at *3 (D.N.J. July 24, 2015). To meet this standard, a plaintiff must demonstrate that the business behavior in question "stands outside the norm of reasonable business practice in that it will victimize the average consumer." *Id.* (citing *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 416 (1995)). Unless the parties' relationship is governed by a valid contract, "whether a business practice is unfair" is typically "a question for the jury." *Urbino v. Ambit Energy Holdings, LLC*, Civil Action No. 14–5184 (MAS)(DEA), 2015 WL 4510201, at *3 (D.N.J. July 24, 2015); *see also Richards v. Direct Energy Services, LLC*, 120 F. Supp. 3d 148, 158 (D. Conn. 2015) (noting that "whether [Defendant energy supplier]'s variable-rate plan was an unfair or deceptive marketing practice is 'a question of fact that is not readily susceptible to resolution on a motion to dismiss.'")

Unlike the Maryland Consumer Protection Act, New Jersey courts seem to agree that all violations of the NJCFA must "meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)." *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, No. 3:08-CV-1057-FLW, 2008 WL 5381227, at *5 (D.N.J. Dec. 17, 2008); *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 510 (D.N.J. 2000); *Slim CD, Inc. v. Heartland Payment Sys.*, No. 06-2256, 2007 WL 2459349 (D.N.J. Aug. 22, 2007) ("The pleading requirements of Rule 9(b) apply to . . . NJCFA claims as well as . . . common law fraud claims.").

### iv.  Analysis

In its previous Opinion, the Court dismissed Plaintiffs' fraud claims because Plaintiffs failed to allege with particularity to which Defendants the statements were attributable. *Id.* at 23. Plaintiffs now re-allege the fraud claims against all Defendants in Counts I, II, and IV of the Second Amended Complaint. ECF No. 57 at 24–28, 30–31. In the Second Amended Complaint, Plaintiffs now allege:

> 23. Each of the misrepresentations made orally by, or on behalf of, the Defendants and/or their corporate affiliates (e.g. XOOM NJ) were consistent with one another and were derived from XOOM selling scripts, marketing and training materials believed to have been composed and distributed by Defendant ACN to its co-conspirators and joint venturers.
>
> 24. Upon information and belief, the plan to deceive prospective XOOM customers is the product of a scheme carried out jointly and knowingly by all Defendants: ACN sold the energy through its IBOs, XOOM Energy produced the selling scripts pursuant to a strategy developed by ACN, and XOOM NJ and XOOM MD supplied the overpriced energy to customers.

ECF No. 57 at 8–9. These additional allegations regarding Defendants' uniform marketing materials, training materials, and selling scripts lend support and clarity to the allegations which were made in the FAC, and are re-alleged in the SAC.

Specifically, Plaintiffs first allege that Phil, an ACN IBO, called Plaintiff Todd in May 2013. According to the Complaint, IBO Phil represented to Mr. Todd that if he switched to XOOM, "his energy bills would be consistently cheaper than what he was paying his local utility provider." ECF No. 57 ¶ 6. Second, Plaintiffs allege that an ACN IBO named Blain visited Plaintiff Donnellon's home in October 2014, showed her XOOM brochures, and promised Ms. Donnellon if she switched to XOOM "her energy bills would be consistently cheaper than if she stayed with [her local service provider]." Third, Plaintiffs allege that an IBO named William visited Plaintiff Bonicos' home in January 2013. IBO William told Mr. Bonicos that if he switched to XOOM, "his energy costs would consistently be 5-10% cheaper than his energy costs with [his local service provider]." With the added allegations regarding the role each Defendant played in developing the material used by the IBOs, Plaintiffs have now stated with particularity the identity of the speakers, the time, the place, and the contents of the statements at issue in a manner that states a claim as to each Defendant.

Additionally, Plaintiffs allege that Defendants made these representations for the purpose of inducing Plaintiffs' reliance — as ACN IBOs made phone calls and home visits to Plaintiffs' homes, speaking with them about XOOM Energy and soliciting them to switch providers, Plaintiffs reasonably relied on the representations and switched providers, only to be charged higher rates. Accordingly, Plaintiffs have stated a claim for common law fraud against XOOM Energy, XOOM Energy Maryland, and ACN. Hence, Defendants' motion to dismiss the common law fraud claims is denied.

Plaintiffs have also stated a claim for violations of the Maryland Consumer Protection Act and New Jersey Consumer Fraud Act. As the Court held previously, the statements made by the IBOs were not mere puffery and could reasonably have induced Plaintiffs' reliance. ECF No. 50 at 23. Failing to disclose that XOOM prices generally increase, were substantially higher than XOOM's competitors, and were rarely lower than its competitors, states a claim under the Maryland Consumer Protection Act. *See Allen v. CitiMortgage, Inc.*, No. CIV. CCB-10-2740, 2011 WL 3425665, at *9 (D. Md. Aug. 4, 2011) (holding that plaintiff stated claim under MCPA when defendants' letters to plaintiffs, "taken in combination," had plausible "effect of deceiving or misleading [plaintiffs]"); *Daniyan v. Viridian Energy, LLC*, GLR–14–2715, 2015 WL 4031752, at *2 (D. Md. June 30, 2015) (dismissing MCPA claim but drawing distinction where energy supplier website and marketing materials state that rates may be higher than utility's rates). This is especially true where "a number of unsophisticated consumers would find that information," i.e. the promise of cost savings on their energy bills, "important in determining a course of action." *Id.*

Likewise, engaging in a "classic bait-and-switch scheme" that "lure[s] potential customers in by making exaggerated claims of energy savings which ultimately prove[s]

16

'illusory'" constitutes the unlawful conduct that plausibly violates the New Jersey Consumer Fraud Act. *See Klein v. Budget Rent a Car Sys., Inc.*, No. CIV.A. 12-7300 JLL, 2013 WL 1760557, at \*6 (D.N.J. Apr. 24, 2013) (finding unconscionable conduct under NJCFA where rental car company engaged in "bait-and-switch" scheme by luring in customers with promises of frequent-flyer miles, then adding hidden surcharges); *Arcand v. Brother Intern. Corp.*, 673 F. Supp. 2d 296–97 (D.N.J. 2009) (finding plaintiff adequately pleaded unlawful conduct under NJCFA where printer company made misrepresentation to induce customers to purchase additional merchandise); *see also Richards v. Direct Energy Services, LLC*, 120 F. Supp. 3d 148, 158 (D. Conn. 2015) (noting that whether a variable-rate plan is an "unfair or deceptive marketing practice" is "not readily susceptible to resolution on a motion to dismiss," and proper inquiry is whether plaintiff alleges "sufficient facts to raise a reasonable expectation that discovery will reveal evidence supporting the claim").[5] Therefore, Defendants' motion to dismiss the MCPA and NJCFA is also denied.

### C. Negligent Misrepresentation

Finally, Plaintiffs re-allege the negligent misrepresentation claims against all Defendants in Count V of the Second Amended Complaint. ECF No. 57 at 28–29. Under the Court's previous Opinion, Messrs. Todd and Bonicos' negligent misrepresentation claims against ACN proceeded; but the Court dismissed the claims against XOOM Energy and XOOM Maryland because it was unclear to whom the alleged misrepresentations could be attributed. Messrs. Todd and Bonicos, the plaintiffs from New Jersey, allege no facts to suggest that XOOM Maryland made misrepresentations to them. Thus, the Court will limit its analysis here to Plaintiffs Todd

---

[5] *Richards* addressed a claim under Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a). *See Richards v. Direct Energy Servs., LLC*, 120 F. Supp. 3d 148, 156.

and Bonicos' negligent misrepresentation claims against XOOM Energy and Plaintiff Donnellon's negligent misrepresentation claims against all Defendants.

As these claims do not sound in fraud, they are subject to the more liberal pleading standard of Fed. R. Civ. P. 8(a)(2). To state a claim for negligent misrepresentation in Maryland: "(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 136 (2007). In the context of negligent misrepresentation, "where the failure to exercise due care creates a risk of economic loss only, 'an intimate nexus between the parties [i]s a condition to the imposition of tort liability." Such an intimate nexus requires "contractual privity or its equivalent." *Superior Bank, F.S.B. v. Tandem Nat. Mortgage, Inc.*, 197 F. Supp. 2d 298, 320 (D. Md. 2000) (quoting *Weisman v. Connors*, 540 A. 2d 783, 791 (Md. 1988)). Under New Jersey law, plaintiffs need only prove that (1) defendant negligently made a false communication of material fact; (2) plaintiff justifiably relied upon the misrepresentation; and (3) the reliance resulted in an ascertainable loss or injury. *Elias v. Unga's Food Prods. Inc.*, 252 F.R.D. 233, 251 (D.N.J. 2008).

As a preliminary matter, multiple Defendants may be liable for the negligent misrepresentations of the IBOs where a civil conspiracy exists. A civil action for conspiracy is essentially a tort action. *Farris v. County of Camden*, 61 F. Supp. 2d 307, 330 (D.N.J. 1999); *accord Hale Trucks of Maryland, LLC v. Volvo Trucks North America, Inc.*, 224 F. Supp. 2d 1010, 1021 (D. Md. 2002). "The conspiracy is not the gravamen of the charge, but merely a

18

matter of aggravation, enabling the plaintiff to recover against all the defendants as joint tortfeasors." *Farris*, 61 F. Supp. 2d at 330; *see also Hale*, 224 F. Supp. 2d at 1021 (explaining that conspiracy "is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiffs."). By contrast, neither Maryland law nor New Jersey law recognizes a cause of action for civil conspiracy for breach of contract or unjust enrichment. *Hale*, 224 F. Supp. 2d at 1021; *Trico Equip., Inc. v. Manor*, Civil No. 08–5561, 2011 WL 705703, *8 (D.N.J. 2011). Thus, where Plaintiffs have set forth sufficient facts suggesting a civil conspiracy between Defendants, Plaintiffs may recover against multiple Defendants jointly for claims sounding in tort — i.e. fraud and negligent misrepresentation — but not for the breach of contract claims.

Plaintiffs have pleaded sufficient facts linking all Defendants to the alleged unlawful activity. Specifically, Plaintiffs allege that XOOM and ACN developed the training materials and content for the IBOs, creating a sales "pitch" that creates "consumer confusion about the entities with which they are dealing." ECF No. 57 ¶¶ 37–39. Plaintiffs allege that "by hiring and training IBOs, ACN knowingly participated in the scheme conceived of, designed, and carried out by XOOM and ACN acting in concert." *Id.* ¶ 39. This scheme, they argue, misled and defrauded customers. *Id.* ¶ 40. Plaintiffs attach no fewer than 29 customer complaints, making such allegations as "ACN rep told us he could [definitely] save us money on electric bill. Got first bill and this is not true at all I have never had bills this high" ECF No. 57 at 15, "ACN rep never told me that Xoom energy will charge monthly service fee, the only thing they told me is they can help to save up to 70% gas bill," *id.* at 21, and "[w]e found out that we actually paid more every month!!!! . . . Watch out for your neighbors and friends who sell you ACN services," *id.* at 13. Plaintiffs also point to a news article in which a former ACN sales rep states, "I'm robbing

people. I pitch[ed] to them that they can save money, but it's the exact opposite." ECF No. 57 ¶ 32. These are sufficient facts to suggest concerted action between XOOM Energy, its subsidiaries, and ACN. Therefore, Messrs. Todd and Bonicos have stated a claim for negligent misrepresentation against XOOM Energy.

However, under Maryland law, which governs Ms. Donnellon's claims, where a plaintiff claims purely economic losses, plaintiff may recover on a negligent misrepresentation claim only if contractual privity or the equivalent exists between plaintiff and defendant. *See Huntington Mortg. Co. v. Mortgage Power Financial Services, Inc.*, 90 F. Supp. 2d 670 (D. Md. 2000) (upholding dismissal of negligent misrepresentation claims where plaintiff mortgage company harmed by faulty appraisals did not show contractual privity between itself and real estate appraisers). The alleged facts do not demonstrate that Ms. Donnellon was in contractual privity or the equivalent with ACN. The facts only suggest that Ms. Donnellon was in contractual privity or the equivalent with XOOM Energy Maryland. Plaintiffs' reliance on *Weisman v. Connors*, 540 A.2d 783 (1988) is unavailing. In *Weisman*, a prospective employer was liable to a prospective employee for negligent misrepresentation when the company vice president made statements about the solvency of the company during "pre-contractual negotiations." *Weisman*, 540 A.2d at 793–94. (1988). However, the defendant in that case was the very same employer with which the employee later contracted for employment. *Id.* at 431 ("[t]his meeting began a chain of events that led to an employment relationship between [Plaintiff] Connors and [Defendant] Weisman"). Here, ACN merely acted as a sales agent for XOOM, and was not in privity with Ms. Donnellon. Accordingly, the dismissal of Ms. Donnellon's claims for negligent misrepresentation against ACN stands.

Ms. Donnellon also cannot proceed on her negligent misrepresentation claims against XOOM Energy or XOOM Energy Maryland because under Maryland law, which controls Plaintiff Donnellon's claims, "a promissory representation made with an existing intention not to perform is actionable for fraud . . . [but] not for negligent misrepresentation." *200 North Gilmor, LLC v. Capital One, Nat. Ass'n*, 863 F. Supp. 2d 480, 492–93 (D. Md. 2012) (internal citations omitted). As Plaintiff Donnellon's fraud claim has already survived dismissal, her negligent misrepresentation claims against these Defendants shall be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Failure to State a Claim, ECF No. 59, is granted, in part, and denied in part. Ms. Donnellon's breach of contract claims (Count III) against XOOM Energy Maryland proceed, and Plaintiffs' breach of contract claims against ACN and XOOM Energy are dismissed. Plaintiffs' common law fraud claims (Count IV), claims under the MCPA (Count I), and claims under the NJCFA (Count II) proceed against all Defendants. Messrs. Todd and Bonicos' negligent misrepresentation claims (Count V) against ACN and XOOM Energy proceed, and Ms. Donnellon's negligent misrepresentation claims against all Defendants are dismissed. A separate Order shall issue.

Date: February 16 2017

George J. Hazel
United States District Judge